1
2
3
4
5
6               **UNITED STATES DISTRICT COURT**
7               **EASTERN DISTRICT OF CALIFORNIA**
8
9  **SPAN CONSTRUCTION &**          )      **CIV-F-06-0286 AWI DLB**
   **ENGINEERING, INC.,**           )
10                                  )
                **Plaintiff**,      )      **ORDER RE: MOTION TO DISMISS**
11                                  )      **FOR LACK OF PERSONAL**
       **v.**                       )      **JURISDICTION**
12                                  )
   **DAVID M. STEPHENS and DOES 1-10,**  )
13                                  )
                **Defendants**.     )
14  _____ )
15
16
17         Defendant has made a motion to dismiss pursuant to Fed. R. Civ. 12(b)(2) for lack of
18  personal jurisdiction.  Plaintiff opposes the motion.  For the reasons that follow, the motion is
19  denied.
20
21                              **I. History**
22         Defendant David M. Stephens has been a resident of Alabama, living in Huntsville, since
23  1991.  He works on construction projects as a project manager.  Plaintiff Span Construction &
24  Engineering, Inc. is a California corporation with its headquarters and principal place of business
25  in Madera, CA.  Plaintiff is a general contractor, working on construction projects around the
26  country.
27         Defendant was originally recruited by Plaintiff on or about July 1, 2000 to work as a
28  project manager on the erection of a building in Huntsville, AL.  There was no formal written

                                    1

1  contract.  After the project was completed, Plaintiff continued to employ Defendant on other

2  projects around the country, but not in California.  Defendant's employment with Plaintiff ended

3  in December 2004.

4      In September 2001, Plaintiff purchased a 1999 Chevrolet Tahoe in Ohio for $20,000 for

5  Defendant's use as a company car.  Defendant asserts that George Goddard, Span's vice

6  president, agreed to give him the car in lieu of a $15,000 bonus in early 2003.  Plaintiff asserts

7  that no such agreement was made.  Defendant sold the vehicle (trading it in) in July 2003 in

8  Huntsville.

9      One project Defendant worked on was the construction of the Maher Terminals

10 (warehouses) in Elizabeth, NJ.  The project involved several companies and construction began

11 in December 2003.  Kajima Construction Services, Inc. was the construction manager, which

12 hired Plaintiff as the general contractor, which hired King Erectors, Inc. to construct a

13 warehouse, which then hired A.C. Dellovade, Inc. to do siding and roofing.  On February 10,

14 2005, Dellovade filed suit against Plaintiff, Kajima, and King for breach of contract in federal

15 court in the District of New Jersey.  The following details of the Maher Terminals project come

16 from the complaint filed in that suit.  On January 21, 2004, King contracted to pay Dellovade

17 $760,000 in installments for specified siding and roofing work.  Dellovade started work on

18 January 26, 2004.  While work was ongoing, Plaintiff and King requested that Dellovade perform

19 supplemental work not specified in the contract.  Dellovade informed Plaintiff and King that the

20 extra work would cost $323,712.43 more.  Plaintiff and King consented, and the extra work was

21 done.  After making one installment payment of $105,691, King failed to additional payments

22 starting in March 2004.  Dellovade complained to Kajima concerning King's failure to make

23 installment payments, threatening to stop work.  Both Kajima and Plaintiff guaranteed that

24 Dellovade would be paid.  Also, in April 2004, Kajima contracted to pay Dellovade $100,000 for

25 completion of certain work which Plaintiff was responsible for but had failed to do.  Dellovade

26 finished work on May 14, 2004.  The various companies were still in discussion about payments

27 as late as July 2004.  Dellovade claims that it is still owed $978,021.40.  In the New Jersey suit,

28 King has filed cross claims against Plaintiff and Plaintiff has filed cross claims against Kajima.

Plaintiff claims that Defendant exceeded his authority in entangling Plaintiff in the whole series of contracts detailed above.  Specifically, Plaintiff claims that Defendant agreed to pay King an additional $760,000 on January 23, 2004 (presumably to pay Dellovade for the siding and roofing work) and later agreed to modifications in the contract with Kajima, taking on additional work.  According to Plaintiff, Defendant did not have the authority, nor did he go through the procedures to get the necessary authorization, to make these changes.

On March 13, 2006, Plaintiff filed suit in the Eastern District of California, broadly seeking indemnity for any adverse judgement in the New Jersey case, expenses related to the New Jersey case, and recovery of the value of the Chevrolet Tahoe.  Plaintiff has brought causes of action for 1) breach of oral employment contract; 2) breach of written employment contract; 3) indemnity under California Labor Code §2865 for negligence; 4) implied contractual indemnity; 5) equitable indemnity; and 6) conversion.  On March 20, 2004, Defendant made a motion to dismiss for lack of personal jurisdiction.  Plaintiff filed a timely opposition.  Defendant filed a timely reply.  The matter was taken under submission without oral argument.

## II. Legal Standards

In the absence of specific statutory provision, federal courts apply the personal jurisdiction laws of the state in which they are situated. See T.M. Hylwa, M.D., Inc. v. Palka, 823 F.2d 310, 312 (9th Cir. 1987).  Pursuant to Cal. Civ. Proc. Code § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits.  "Since California's jurisdictional statute is coextensive with federal due process requirements, the jurisdictional inquiries under state law and federal due process merge into one analysis." Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).  "We are not bound by state cases, although they may be considered persuasive authority." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). "A state may exercise either general or specific jurisdiction over a defendant. If a defendant's activities within the forum state are 'continuous and systematic' or 'substantial,' the state has a sufficient relationship with the defendant to assert general jurisdiction. If, however, a forum state cannot assert general jurisdiction over the defendant, it

may still assert specific jurisdiction depending on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action." Lake v. Lake, 817 F.2d 1416, 1420-21 (9th Cir. 1987). "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414 (1984), citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

**A. General Jurisdiction**

"The standard for establishing general jurisdiction is fairly high, and requires that the defendant's contacts be of the sort that approximate physical presence. Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000), citations omitted.  In addition to contacts in general, assertion of personal jurisdiction must be reasonable. Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.2 (9th Cir. 1993).  The Ninth Circuit has stated explicitly that they "regularly have declined to find general jurisdiction even where the contacts were quite extensive." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993).

**B. Specific Jurisdiction**

For specific jurisdiction, there is a three part test: "1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities  in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991).  "When a court is exercising specific jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave

1  rise to the suit occurred." Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987), citations

2  omitted.

3      "The purposeful availment standard requires more than foreseeability of causing injury in

4  another state. Rather, the foreseeability that is critical to due process analysis is that the

5  defendant's conduct and connection with the forum State are such that he should reasonably

6  anticipate being haled into court there. The purposeful availment prong prevents defendants from

7  being haled into a jurisdiction through random, fortuitous, or attenuated contacts." Terracom v.

8  Valley Nat'l Bank, 49 F.3d 555, 560 (9th Cir. 1995).  "[O]rdinarily use of the mails, telephone,

9  or other international communications simply do not qualify as purposeful activity invoking the

10  benefits and protection of the forum state." Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir.

11  1985), citations omitted.  The second prong requires that the contacts relied on for personal

12  jurisdiction actually relate to the cause of action. MGM Studios Inc. v. Grokster, Ltd., 243 F.

13  Supp. 2d 1073, 1085 (C.D. Cal. 2003) ("Contacts with a forum state are relevant for purposes of

14  specific jurisdiction only if they are sufficiently related to the cause of action.....Thus, if

15  Plaintiffs' claims would have arisen notwithstanding certain contacts, those contacts are not

16  relevant to the jurisdictional analysis").  "But for" causation is all that is required since "A

17  restrictive reading of the 'arising out of' requirement is not necessary in order to protect potential

18  defendants from unreasonable assertions of jurisdiction." Shute v. Carnival Cruise Lines, 897

19  F.2d 377, 385 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991).  Once a court has

20  found purposeful availment, the reasonableness of jurisdiction is presumed. Sher v. Johnson, 911

21  F.2d 1357, 1364 (9th Cir. 1990).  The burden is then shifted to the defendant to show "the

22  presence of some other considerations would render jurisdiction unreasonable." Burger King

23  Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).  Specific jurisdiction must be established for

24  each claim separately. See Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d

25  1280, 1289 n.8 (9th Cir. 1977) ("Where, as here, a plaintiff raises two separate causes of action,

26  the court must have in personam jurisdiction over the defendant with respect to each claim. See 6

27  C. Wright & A. Miller, Federal Practice and Procedure § 1588, at p. 816 (1971). However, if the

28  court determines that there has been a sufficient showing of personal jurisdiction to reach trial

with regard to one claim, but not the other, it may or may not be appropriate to assume

jurisdiction over the other claim under principles analogous to the doctrine of pendent

jurisdiction").

**C. Reasonableness**

Reasonableness is a requirement for both general and specific jurisdiction. "The Supreme

Court has bifurcated this due process determination into two inquiries, requiring, first, that the

defendant have the requisite contacts with the forum state to render it subject to the forum's

jurisdiction, and second, that the assertion of jurisdiction be reasonable." Amoco Egypt Oil Co.

v. Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993). In determining whether the exercise

of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable,"

courts are to consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum; (3) the extent of
> conflict with the sovereignty of the defendant's state; (4) the forum state's interest
> in adjudicating the dispute; (5) the most efficient judicial resolution of the
> controversy; (6) the importance of the forum to the plaintiff's interest in
> convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002); FDIC v. British-American Ins.

Co., 828 F.2d 1439, 1442 (9th Cir. 1987).

Notwithstanding the formal general and specific jurisdiction requirements, the Ninth

Circuit has stated that a more "flexible approach" may be appropriate. "Jurisdiction may be

established with a lesser showing of minimum contacts if considerations of reasonableness

dictate. Under this analysis, there will be cases in which the defendant has not purposefully

directed its activities at the forum state, but has created sufficient contacts to allow the state to

exercise personal jurisdiction if such exercise is sufficiently reasonable." Ochoa v. J.B. Martin &

Sons Farms, 287 F.3d 1182, 1189 n.2 (9th Cir. 2002). Overall, "Questions of personal

jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness

and fairness must be decided on a case-by-case basis." Wells Fargo & Co. v. Wells Fargo

Express Co., 556 F.2d 406, 426 (9th Cir. 1977), quoting Perkins v. Benguet Consol. Mining Co.,

342 U.S. 437, 445 (1952).

6

1

2      **D. Burden**

3          The plaintiff bears the burden of establishing that the Court has personal jurisdiction. See

4      Fed. Deposit Ins. Corp. v. British-American Ins. Co., 828 F.2d 1439, 1441 (9th Cir. 1987).

5      When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to

6      come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Amba

7      Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977).  The plaintiff must "only

8      make a prima facie showing of jurisdictional facts through the submitted materials," if the trial

9      court's ruling is based solely upon a review of affidavits and discovery materials. Data Disc, Inc.

10     v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1970); Ballard v. Savage, 65 F.3d 1495,

11     1498 (9th Cir. 1995).  "In determining whether [plaintiff] has met this burden, uncontroverted

12     allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts

13     contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding

14     whether a prima facie case for personal jurisdiction exists." AT&T v. Compagnie Bruxelles

15     Lambert, 94 F.3d 586, 588 (9th Cir. 1996), citations omitted.  "If only one side of the conflict

16     was supported by affidavit...we may not assume the truth of allegations in a pleading which are

17     contradicted by affidavit." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d

18     1280, 1284 (9th Cir. 1977).  The Fourth Circuit has described the standard as requiring courts to

19     "draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the

20     plaintiff's favor." Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  The Northern

21     District has said that courts will make "all likely related inferences" in favor of plaintiffs.

22     Quokka Sports, Inc. v. Cup Int'l Ltd., 99 F. Supp. 2d 1105, 1112 (N.D. Cal. 1999).

23          "If the pleadings and other submitted materials raise issues of credibility or disputed

24     questions of fact with regard to jurisdiction, the district court has the discretion to take evidence

25     at a preliminary hearing in order to resolve the contested issues," at which the plaintiff must

26     establish personal jurisdiction by a preponderance of the evidence. Data Disc, Inc. v. Sys. Tech.

27     Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  "Discovery may appropriately be granted

28     where pertinent facts bearing on the question of jurisdiction are controverted or where a more

satisfactory showing of the facts is necessary." <u>Data Disc, Inc. v. Systems Technology</u>

<u>Associates, Inc.</u>, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

**III. Discussion**

Plaintiff asserts that Defendant's "contacts with California are sufficient not only for

specific jurisdiction, but for general jurisdiction as well." Doc. 15, Opposition, at 1:17-18.

Plaintiff has summarized the contacts as follows: (1) Defendant was employed by Plaintiff, a

California corporation, for four years; (2) Defendant was initially trained in Madera, CA for two

weeks; (3) during the term of his employment, Defendant was in California for work purposes

between seven and fourteen days each year[1]; (4) Defendant communicated at least once a week

with his supervisor who was in California; (5) Defendant communicated at least once a day with

his administrative assistant who was in California; (6) expense reimbursements checks were, at

all times, sent out from California; (7) until December 2002, when direct deposit began,

Defendant received his salary by checks sent out from California; and (8) Defendant participated

in Plaintiff's 401k retirement plan which was administered in California.  Plaintiff has provided a

number of declarations substantiating these contacts, all of which arise from Defendant's

employment relationship with Plaintiff. See Doc. 15, Parts 4-8.


**A. General Jurisdiction**

Though Plaintiff argues that Defendant's contacts with California are continuous and

systematic, giving rise to general jurisdiction, Plaintiff does not cite to any case law for support.

See Doc. 15, Opposition, at 2:23-3:18.  Plaintiff just relies on the approximately eight contacts

---

[1]Defendant argues that Plaintiff has overestimated the amount of time spent in California as there were occasions when Plaintiff had purchased airline tickets for Defendant which were never used. Doc. 17, Stephens Declaration, at 2:16-20.  Defendant represents that he traveled to California for work five or six times in 2001, fewer than five times in 2002, twice in 2003, and once in 2004. Doc. 12, Stephens Declaration, at 2:19-3:2.  The different assertions are immaterial; the court accepts that Defendant traveled to California for work purposes at least once and no more than six times a year for a yearly total of between seven and fourteen days.

8

1  listed above.

2      Most general jurisdiction cases involve corporate defendants; it is rarer for a plaintiff to

3  allege the existence of general jurisdiction over a non-resident individual.  For a corporation,

4  "The standard for establishing general jurisdiction is fairly high, and requires that the defendant's

5  contacts be of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta

6  Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000), citations omitted.  A Fifth Circuit case is one

7  example where a non-resident individual was found to have the continuous and systematic

8  contacts necessary for general jurisdiction:

9          Harvey's general contacts with Texas include the following: (1) Harvey attended college
           and was formerly employed in Texas; (2) Harvey owns real estate in Texas, specifically a
10         condominium in Houston; (3) Harvey has travelled to Texas on numerous occasions to
           visit his children; (4) Harvey frequently visits Texas for recreation; and (5) Harvey has
11         transacted a great deal of business in Texas. In addition to his transaction with Holt,
           Harvey has had extensive business dealings with Permian Records of Dallas, Texas.
12         Harvey has been a director of Permian Records and has attended director's meetings in
           Dallas. Harvey has also invested $250,000.00 in Permian Records. Finally, Harvey is the
13         sole shareholder of Marlin Oil Company. Marlin Oil has drilled several wells in Texas
           and been involved in litigation in Texas. Harvey has travelled to Texas on several
14         occasions in connection with the activities of Marlin Oil.

15         None of Harvey's various contacts with Texas, alone, would support an exercise of
           general jurisdiction. For example, Harvey's frequent journeys into Texas for personal and
16         recreational purposes would not by themselves constitute the level of contact which must
           exist for general jurisdiction to lie. Similarly, Harvey's ownership of realty in the forum
17         unrelated to this litigation would not alone support an exercise of general jurisdiction.
           Nor would Harvey's status as an investor and former director of a Texas corporation
18         alone be sufficient.

19         Determining the existence of personal jurisdiction does not, however, involve an
           examination of each of Harvey's contacts with Texas viewed in isolation from one
20         another. Rather we are required to examine Harvey's contacts in toto to determine
           whether they constitute the kind of continuous and systematic contacts required to satisfy
21         due process. The record reveals that Harvey has maintained constant and extensive
           personal and business connections with Texas throughout his adult life. These contacts
22         differ both qualitatively and quantitatively from the sort of random, fortuitous, or
           attenuated contacts which will not support an exercise of in personam jurisdiction.
23  Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 779 (5th Cir. 1986), citations omitted.  These

24  constant and extensive personal and business connections with a state are the equivalent of

25  approximate physical presence.

26      The New York state courts, though dealing with state law that does not assert jurisdiction

27  coextensive with the Due Process Clause, have dealt with the issue of individuals employed in

28  state who live outside state boundaries.  "An individual permanently employed in New York

City, who regularly commutes on a daily basis to conduct business here, can be deemed present in New York." FCNB Spiegel v. Dimmick, 619 N.Y.S.2d 935, 937 (N.Y. Civ. Ct. 1994).  In contrast, an individual who visited New York every month for a few days on business and also owned property in state was found not to be subject to jurisdiction. See Nilsa B. v. Clyde Blackwell H., 445 N.Y.S.2d 579, 583 (N.Y. App. Div. 1981).

In case after case, when an individual conducts business that requires their occasional presence in a state, courts have not found sufficient contact for general jurisdiction.  The California Supreme Court found no general jurisdiction where "defendant's activity in California consisted of some 20 trips a year into the state over the past 7 years to deliver and obtain goods, an independent contractor relationship with a local broker, and a Public Utilities Commission license." Cornelison v. Chaney, 16 Cal. 3d 143, 149 (Cal. 1976).  "Plaintiff alleges that the Individual Defendants made a series of phone calls to plaintiff in Washington and also sent a contract to him there. The only other contacts that the Individual Defendants have had with Washington include Lee Ann Sheriff's visit to Washington in the mid-1990s; Craig Heligman's attendance at a medical conference; and Scott Jones' attendance at a training session, a short vacation in Seattle, twice stopping at SeaTac Airport on lay-overs, and one visit to give a presentation. These brief contacts with Washington are not continuous and substantial enough to subject any of the Individual Defendants to general jurisdiction." Whalen v. Nat'l Occupational Health Strategies, LLC, NO. C05-0915RSM, 2006 U.S. Dist. LEXIS 5931 at *7 (W.D. Wash., Jan. 25, 2006).  "The Court does not have general jurisdiction over Toeppen. First, he is domiciled in Illinois, not California. Second, his activities in California are not substantial, systematic, or continuous. In 1996, Toeppen was in California twice, which he asserts is representative of his yearly contacts with this state." Panavision Int'l, L.P. v. Toeppen, 938 F. Supp. 616, 620 (C.D. Cal. 1996), cited to approvingly at Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  In evaluating franchisor defendants, "[T]he only forum-related activities alleged by plaintiff on the part of individual defendants are phone calls, written correspondence and one personal visit by James Edgette to the grand opening of plaintiff's franchise. Therefore, under the substantial or systematic and continuous contacts standard of the

1   Ninth Circuit for general jurisdiction, the individual defendants cannot be subject to this court's

2   jurisdiction." <u>Olson v. Entre Computer Centers, Inc.</u>, No. C-87-20417-WAI, 1988 U.S. Dist.

3   LEXIS 17473, at *7-8 (N.D. Cal., Aug. 16, 1988).

4          There are insufficient contacts to establish general jurisdiction over Defendant.

5

6   **B. Specific Jurisdiction**

7          For specific jurisdiction, Plaintiff must show three factors: "1) the nonresident defendant

8   must have purposefully availed himself of the privilege of conducting activities in the forum by

9   some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the

10  defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." <u>Roth v.

11  Garcia Marquez</u>, 942 F.2d 617, 620-21 (9th Cir. 1991).  As Defendant characterizes the suit,

12  Plaintiff's claims deal with two actions: "(1) Claims relating to a change order for the Maher

13  Terminals, Inc. warehouse project in Elizabeth, New Jersey, and (2) a claim that Stephens was

14  not entitled to a vehicle described as a 1999 Chevrolet K1500 Tahoe." Doc. 10, Memorandum, at

15  6:13-15.  Though the claims deal with events that took place in New Jersey and Alabama

16  respectively, they all arise from the employment relationship.  Separate analysis for the two

17  groups of claims is unnecessary as neither of them would have arisen but for the employment.

18  Therefore, all eight contacts listed above (which deal with the parties' actual course of

19  employment dealings) are relevant to purposeful availment analysis.  Consideration of

20  reasonableness is put aside for later discussion.

21         Dealing with the contacts as a whole, Defendant cites to Ninth Circuit opinions to support

22  his argument that there is no purposeful availment.  First, he cites to <u>Wright v. Yackley</u>, 459 F.2d

23  287, 289 (9th Cir. 1972) for the proposition, "In the case of personal services, focus must be on

24  the place where the services are rendered, since this is the place of the receiver's...need." Doc.

25  10, Memorandum, at 5:1-3.  In <u>Wright</u>, the defendant was a South Dakota doctor who prescribed

26  medications to a South Dakota resident.  The patient then moved to Idaho and brought suit in that

27  state.  The Ninth Circuit found no specific jurisdiction.  Another case Defendant cites is <u>Sher v.

28  Johnson</u>, 911 F.2d 1357 (9th Cir. 1990). Doc. 10, Memorandum, at 5:10-14.  In <u>Sher</u>, plaintiff

1   was a California resident who was charged with a crime in Florida.  He retained Florida counsel

2   for the criminal case but later sued in California for legal malpractice.  The Ninth Circuit said:

3   "Out-of-state legal representation does not establish purposeful availment of the privilege of

4   conducting activities in the forum state, where the law firm is solicited in its home state and takes

5   no affirmative action to promote business within the forum state. This, of course, is not the end

6   of the matter; the Shers allege several additional contacts between the partnership and California.

7   For example, on three occasions Johnson travelled to Los Angeles to meet with the Shers and

8   Nolan in connection with the partnership's representation of Sher. Even this action, however,

9   when combined with the firm's underlying representation of a California client, does not

10  constitute purposeful availment of the privilege of conducting activities within California." Sher

11  v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990).  The court ultimately found personal

12  jurisdiction largely based on the fact that the legal partnership accepted property in California as

13  payment for the representation. Sher v. Johnson, 911 F.2d 1357, 1363-64 (9th Cir. 1990)

14  (jurisdiction based on "the partnership's entire 'course of dealing' with the Shers related this

15  contract, including the calls and letters, the trips and the deed").

16      Both Wright and Sher can be said to be motivated by a common policy interest: having

17  certain services available without having the provider worry about suit in a distant forum.  "[T]he

18  idea that tortious rendition of such services is a portable tort which can be deemed to have been

19  committed wherever the consequences foreseeably were felt is wholly inconsistent with the

20  public interest in having services of this sort generally available....a state's dominant interest on

21  behalf of its citizens in such a case as this is not that they should be free from injury by

22  out-of-state doctors, but rather that they should be able to secure adequate medical services to

23  meet their needs wherever they may go" Wright v. Yackley, 459 F.2d 287, 290-91 (9th Cir.

24  1972).  As a matter of significant public policy, we wish to ensure that medical care and legal

25  services for criminal defense are generally available to all.  The same interest does not hold for

26  architectural or construction services.

27      In contrast, Plaintiff cites to Hylwa v. Palka, 823 F.2d 310 (9th Cir. 1987) and Integral

28  Development. Corp. v. Weissenbach, 99 Cal. App. 4th 576 (Cal. Ct. App. 2002). Doc. 15,

1   Opposition, at 4:5-6:23.  In <u>Hylwa</u>, the defendant was an accountant who was a resident of

2   Kansas.  He provided accounting services to plaintiff's medical practice, starting when the

3   practice was in Kansas, and continuing when plaintiff moved the practice to California.  "Palka

4   performed most of the accounting services while at home in Kansas but traveled to California to

5   work in Hylwa's offices for seven to ten days during each June from 1981 to 1983, and in August

6   1983 he returned to California to work on Hylwa's tax audit." <u>T.M. Hylwa, M.D., Inc. v. Palka</u>,

7   823 F.2d 310, 312 (9th Cir. 1987).  Specific jurisdiction was found "Based on his ongoing

8   performance of accounting services for a California enterprise, including his annual business

9   trips to California." <u>T.M. Hylwa, M.D., Inc. v. Palka</u>, 823 F.2d 310, 314 (9th Cir. 1987).

10          Courts are sensitive to the fact that "when the defendant cannot reasonably control his

11   own vulnerability to suit, personal jurisdiction does not lie." <u>T.M. Hylwa, M.D., Inc. v. Palka</u>,

12   823 F.2d 310, 314 (9th Cir. 1987).  Defendant points out that he did not seek employment with a

13   California firm, but instead was recruited by Plaintiff in Alabama to work on an Alabama

14   construction job.  Nevertheless, his contact was not limited to that one job; he continued to work

15   for Plaintiff at other sites.  The choice to take on additional work after that contact is significant.

16   "While arguably Palka's initial contact with California was created by Hylwa's unilateral

17   decision to move there, Palka's decision to continue serving as an accountant for Hylwa's

18   California practice from 1981 to 1984 arose not from Hylwa's unexpected relocation but from

19   Palka's continuing desire to benefit from the contractual relationship." <u>T.M. Hylwa, M.D., Inc. v.</u>

20   <u>Palka</u>, 823 F.2d 310, 314 (9th Cir. 1987).  This rationale also distinguishes <u>Sher</u>.  In that case, the

21   court noted that "the partnership did not solicit Sher's business in California; Sher came to the

22   firm in Florida. There is no 'substantial connection' with California because neither the

23   partnership nor any of its partners undertook any affirmative action to promote business within

24   California." <u>Sher v. Johnson</u>, 911 F.2d 1357, 1362 (9th Cir. 1990).  The legal representation was

25   a singular event; it did not lead to further representation in other matters.

26          On a similar track, Defendant argues that one reason for the "purposeful availment"

27   requirement is to allow non-residents to "take acts to protect against the cost of litigating, such as

28   purchasing insurance." Doc. 10, Memorandum, at 6:27-28, citing <u>World-Wide Volkswagen</u>

1  Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Defendant notes that he "could not have

2  purchased insurance if he tried, as his activities were in New Jersey, not in California." Doc. 10,

3  Memorandum, at 6:27-7:4.  However, the U.S. Supreme Court said that a party "can act to

4  alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on

5  to customers, or, if the risks are too great, severing its connection with the State." World-Wide

6  Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  As the U.S. Supreme Court stated,

7  purchasing insurance is not the only means by which the risk of litigation can be managed.

8          The case most factually similar is Integral Development. Corp. v. Weissenbach, 99 Cal.

9  App. 4th 576 (Cal. Ct. App. 2002) which dealt with specific jurisdiction over an individual in

10  Germany hired by a California company to be general manager of a subsidiary.  The cause of

11  action arose in the course of Defendant's employment.  The employment contract was "signed by

12  both parties in Munich, Germany....During the course of his employment, Weissenbach regularly

13  reported to the California office of Integral-California via telephone and e-mail regarding the

14  progress of the business in Germany. He was also in touch with the director of human resources

15  at Integral regarding expense receipts and other details of his compensation package. In

16  November of 1997, Weissenbach traveled to California for a business meeting at

17  Integral-California's offices to discuss the status of the business operations of Integral-Germany."

18  Integral Development. Corp. v. Weissenbach, 99 Cal. App. 4th 576, 581-82 (Cal. Ct. App. 2002).

19  Specific jurisdiction was found despite defendant's assertion that "he was hired to manage

20  business operations in Germany. The General Manager Contract was signed in Germany. He did

21  not approach Integral-California seeking employment. Rather he was recruited in Europe by

22  officers of Integral-California, who were also officers of the European company, Integral-U.K.

23  The recruitment and initial interviews took place in Europe. Weissenbach came to California

24  only twice, both times at the request of Integral-California and for purposes relating to his

25  position as manager of the German office. He had no job duties in California, conducted no

26  business in California and had no customers in California. His job responsibilities related only to

27  the performance of the company in Germany. He was paid by Integral-Germany in

28  Deutschmarks." Integral Development. Corp. v. Weissenbach, 99 Cal. App. 4th 576, 585-586

1   (Cal. Ct. App. 2002).  <u>Integrated</u> convincingly demonstrates that specific jurisdiction exists given

2   the similar factual situation in this case.

3

4   **C. Reasonableness**

5        In order to defeat the presumption of jurisdiction at this stage, Defendant "must present a

6   compelling case that the presence of some other considerations would render jurisdiction

7   unreasonable." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985).  The seven factors to

8   be considered are (1) the extent of the defendants' purposeful injection into the forum state's

9   affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with

10  the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

11  (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to

12  the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative

13  forum.

14       As discussed in the section on specific jurisdiction, Defendant purposefully injected

15  himself into California's affairs.  The Ninth Circuit has said that "There may be circumstances

16  under which the level of purposeful injection into the forum supports a finding of purposeful

17  availment yet still weighs against the reasonableness of jurisdiction," but the discussion suggests

18  that knowledge on the part of a defendant that there would be an effect in the forum state is

19  enough to establish reasonableness. <u>Dole Food Co. v. Watts</u>, 303 F.3d 1104, 1114-15 (9th Cir.

20  2002).

21       The sovereignty of Alabama, Defendant's home state, is not greatly impacted as the case

22  largely has to do with actions in New Jersey.  The only interest Alabama has is that it involves

23  the legal interests of a resident.  This is a weak factor in favor of Defendant.  Similarly,

24  California's interest is limited to the impact the conflict has on one of its corporate citizens.

25  Nevertheless, California does have an interest in protecting its citizen from tort or breach of

26  contract.

27       The heart of this case deals with construction of the Maher Terminals.  The District of

28  New Jersey is an available alternative forum.  Interestingly enough, pursuing this case in

1   California may not result in effective relief for Plaintiff.  Plaintiff seeks indemnity from

2   Defendant from any award that the plaintiffs in the New Jersey case might win.  Defendant is not

3   a party to that suit so neither claim nor issue preclusion would apply.  Plaintiff faces the very real

4   risk of inconsistent verdicts.  Overall, dealing with this matter in coordination with the case

5   already pending in the District of New Jersey would be the most efficient judicial resolution of

6   the controversy.  Defendant's burden of defending this suit in California is to be considered.

7   Plaintiff asserts that "almost all of the evidence relating to SPAN's claims is located in

8   California." Doc. 15, Opposition, at 9:22-23.  While a large part of it is in California, much of it

9   is plainly not.  The witnesses to the actual contract modifications and discussions surrounding the

10  Maher Terminals project are not located in California.  Both parties will have to gather evidence

11  in other states.  In discussing the burden of litigation, Defendant points out that Plaintiff has

12  retained counsel in New Jersey. Doc. 16, Reply, at 4:23-25.  But it is self evident that Defendant

13  himself has retained counsel here in California.  Overall, "it is not enough that [defendant]

14  demonstrate that some other forum is more reasonable than California, it must show a due

15  process violation....In this era of fax machines and discount air travel, requiring [defendant] to

16  defend itself in California under the circumstances as it alleges them [inability to continue

17  working while defending suit] would not be so unreasonable as to violate due process." Sher v.

18  Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990).

19      Defendant has not convincingly demonstrated that jurisdiction would be unreasonable in

20  this case.  While there appears to be a good argument to be made for transfer of venue, assertion

21  of personal jurisdiction over Defendant comports with due process.

22

23  **D. Burden**

24      In evaluating this motion, "uncontroverted allegations in [plaintiff's] complaint must be

25  taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved

26  in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction

27  exists." AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996), citations

28  omitted.  Defendant argues that "to the extent existing case law prohibits the trier of fact from

**16**

1  weighing the evidence, the law should be changed in this case...Due process requires a

2  modification of the rule in an employer/employee context in order not to offend traditional

3  notions of fair play and substantial justice." Doc. 16, Reply, at 8:20-23 and 9:3-5.  The court

4  would first note that there are no substantial discrepancies between the parties' representations

5  with respect to the facts upon which jurisdiction is analyzed; the parties' conflicting factual

6  assertions concern the substance of the case.  Second, Defendant provides no convincing

7  precedent for this argument.  To the extent that Defendant wishes to promulgate a new

8  framework for evaluating challenges for personal jurisdiction, he must take that up on appeal to

9  higher courts.

10

11                                    **IV. Order**

12          Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

13

14  IT IS SO ORDERED.

15  **Dated:    July 5, 2006**                        ____/s/ Anthony W. Ishii____
    0m8i78                                          UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28